UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:14-CV-00644-TBR

JYRONNA PARKER,                                                    PETITIONER

v.

KENTUCKY DEPARTMENT OF CORRECTIONS,                      RESPONDENT

### MEMORANDUM OPINION

This matter is before the Court on Petitioner Jyronna Parker's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. [DN 1.] Respondent Kentucky Department of Corrections (KDOC)[1] filed a response. [DN 10.] Parker replied. [DN 12.] The Magistrate Judge filed Findings of Fact and Conclusions of Law and Recommendation. [DN 20.] Parker filed objections thereto. [DN 22.] Respondent did not file a response, and this matter is now ripe for adjudication. Having conducted a *de novo* review of the portions of the Magistrate Judge's report to which Parker objected, the Court **ADOPTS IN PART** the Findings of Fact and Conclusions of Law as set forth in the report submitted by the Magistrate Judge. The Court additionally **ADOPTS** the Magistrate Judge's Recommendations that both the petition and a certificate of appealability be denied. For the reasons stated herein, Parker's objections are **OVERRULED**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

### BACKGROUND

Jyronna Parker ("Petitioner" or "Parker") was convicted of the intentional murder of George Campbell after a trial by jury in Jefferson County, Kentucky state court in 1997. [DN 1-2

---

[1] At the time the response was filed, the Respondent in this matter was Warden Ravonne Sims. However, as explained below, after Parker was released on Parole, the proper Respondent became the Kentucky Department of Corrections, Division of Probation and Parole. Accordingly, the Court granted the Attorney General's motion to substitute the KDOC as the proper Respondent. [DN 27; DN 28.]

at 1–2 (trial court's 1997 judgment of conviction).][2] He was sentenced to sixty-five years imprisonment. [*Id.* at 2.] The facts leading to the prosecution of Parker, as summarized by Supreme Court of Kentucky in its 1999 decision affirming the conviction, are as follows:

> On May 29, 1994, Appellant went to the home of his estranged wife, Shonda Parker, to return their son after having taken him to visit his grandfather. Upon leaving the house, Appellant took Shonda's pager, which he later testified was because he could no longer afford the cost. Later that day, the pager went off, and appellant called the number to inform the individual that the pager was no longer in service. Shortly thereafter, the pager went off again, and Appellant called and repeated his message. The third time the pager went off with the same number and Appellant returned the call, the person who answered threatened to kill him. Thereafter, Appellant drove to his own house, which he shared with a friend, Stephanie Jackson.

> Later during the evening, the pager went off again with the same number as the previous calls. Appellant stated that he returned the call to prevent the individual who was calling the pager from coming to his house. Again, the individual threatened him and Appellant suggested that they meet to "handle" the situation. Appellant retrieved a shotgun and walked to the meeting place. After waiting a few minutes he decided to return home. He testified that as he was walking down an alley, someone fired a gun at him. As he ran, he noticed a blue car at the other end of the alley. Appellant returned home and went to lie down, but kept the shotgun at his side. At some point, Shonda called and spoke to Jackson about the events of the evening. Shonda informed Jackson that the individual who had been calling the pager was her boyfriend, Angelo Fleming. Appellant testified that having learned who the caller was, he decided that his life was in danger and that he needed to leave Louisville. While he was gathering some belongings to take with him, there was a knock at the door. Appellant grabbed his shotgun, opened the door and fired the gun. He thereafter realized that the individual at the door was George Campbell, Jackson's boyfriend. Campbell died from a shotgun blast to the face.

> Appellant fled Kentucky to North Carolina where he eventually surrendered to the Greenville, North Carolina, police.

[DN 1-2 at 3 (Supreme Court of Kentucky's 1999 opinion affirming conviction).] Parker appealed his 1997 conviction as a matter of right to the Supreme Court of Kentucky, which

---

[2] Petitioner's first trial was in 1995, after which he was found guilty but mentally ill and sentenced to life imprisonment. [DN 1-2 at 3–4; 9.] In a decision issued November 1, 1996, however, the Supreme Court of Kentucky reversed the conviction and remanded for a new trial after finding that Petitioner requested, but did not receive, a separate jury instruction on the wanton or reckless belief in the need for self-defense. [*Id.* at 4; 10.]

affirmed the conviction in a ruling issued on June 17, 1999. [*Id.*] Parker subsequently filed a *pro se* post-conviction motion to vacate judgment and conviction under Kentucky Rule of Criminal Procedure 11.42 ("RCr 11.42") on May 31, 2000. [DN 1-2 at 20 (Kentucky Court of Appeals' 2013 decision affirming denial of RCr 11.42 motion).] Appointed counsel later filed a supplemental memorandum in support of the RCr 11.42 motion on June 1, 2001. [*Id.*] The trial court denied the RCr 11.42 motion on April 15, 2003. [*Id.* at 17.] However, upon reconsideration, the trial court held an evidentiary hearing on September 23, 2005 and December 6, 2006 to consider a single claim of ineffective assistance of counsel. [*Id.*] Approximately five years later, the trial court denied the RCr 11.42 motion on October 25, 2011. [DN 1-2 at 16 (trial court's 2011 decision denying RCr 11.42 motion).]

Parker appealed the trial court's denial of his RCr 11.42 motion to the Kentucky Court of Appeals, which affirmed the trial court in a decision issued August 23, 2013. [DN 1-2 at 20.] Parker then sought discretionary review of the Court of Appeals' decision, which the Supreme Court of Kentucky denied on August 13, 2014. [DN 1-2 at 28.]

Parker filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the District Court for the Western District of Kentucky on September 22, 2014. [DN 1 at 1.] In his petition, Parker raises four grounds on which he alleges he is being held in violation of the Constitution, laws, or treaties of the United States. [*Id.* at 5–11.] First, Parker contends that two jury instructions given at his 1997 trial were erroneous thereby denying him "adequate notice, due process, and a fundamentally fair trial" under the Fifth, Sixth, and Fourteenth Amendments. [*Id.* at 5.] Second, Parker contends his Fifth, Sixth, and Fourteenth Amendment rights were violated when he was not permitted to cross-examine a key prosecution witness regarding whether the witness had motive to testify favorably for the prosecution. [*Id.* at 7.] Third, Parker contends that

his trial counsel failed to present a defense emphasizing Parker's Post Traumatic Stress Disorder ("PTSD") symptoms, thereby amounting to ineffective assistance of counsel in violation of the Sixth Amendment. [*Id.* at 8.] Fourth, Parker contends that his due process rights were violated when a State forensic psychiatrist was prohibited from testifying about her expert opinion that Parker "was suffering from an extreme emotional disturbance at the time of the fatal shooting." [*Id.* at 10.]

Parker was released from prison and granted parole on June 1, 2016. [DN 27-2.] Parker's "custody was then transferred to the KDOC, Division of Probation and Parole." [DN 27 at 1.] As a result, this Court granted the Attorney General's Motion to Substitute the Kentucky Department of Corrections as Respondent for Warden Ravonne Sims [DN 27], who was the original respondent in this matter. [DN 28.] Parker's habeas petition remains justiciable by this Court, as the Supreme Court has explained that "[a]n incarcerated convict's (or a parolee's) challenge to the validity of his conviction always satisfies the case-or-controversy requirement, because the incarceration (or the restriction imposed by the terms of the parole) constitutes a concrete injury, caused by the conviction and redressable by invalidation of the conviction." *Spencer v. Kemna*, 523 U.S. 1, 7–8 (1998). The limitations imposed upon Parker by the conditions of his parole therefore satisfy Article III's case-or-controversy requirement in this case.

As discussed below, the Magistrate Judge filed an exhaustive eighty-six page report and recommendation in which he rejected each of Parker's grounds of relief and recommended denial of the petition and the denial of a certificate of appealability. [DN 20.] Parker filed objections. [DN 22.] Pursuant to 28 U.S.C. § 636(b)(1), this Court will "make a de novo determination of those portions of the report or specified proposed findings or recommendations

4

to which objection is made." Upon such review, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

STANDARD

The purpose of the writ of habeas corpus is "to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983).

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996) ("AEDPA") amended the habeas statute, 28 U.S.C. § 2254, and applies to all habeas cases filed after April 25, 1996. The petition in this case was filed after that date, and therefore, the amendments to § 2254 are applicable. *See Walker v. Smith*, 360 F.3d 561, 563 (6th Cir. 2004). "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 403–404 (2000)). The habeas statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

§ 2254(b)(1). Section 2254(d), as amended by the AEDPA, states:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). Section 2254(d) "bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)" above. *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

Following the modifications set forth by the AEDPA, the Sixth Circuit has explained that a state court decision may only be overturned if:

1. It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' or; 2. the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or 3. 'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or 4. the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

*Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001) (internal citations omitted); *see also* *Williams v. Taylor*, 529 U.S. 362, 406–409; 412–13 (2000).

When performing analysis of a state court decision pursuant to § 2554(d), the first requirement is that state courts be tested only against "clearly established Federal law, as determined by the Supreme Court of the United States." In order to be clearly established law, the law relied on by the petitioner must be law that was clearly established at the time the state

court decision became final, not afterward. *Williams*, 529 U.S. at 380. The federal court is also limited to law "as determined by the Supreme Court" only. *Id.* at 381–82.

Second, the Court must determine whether the state court decision was "contrary to, or involved an unreasonable application of" that clearly established law. *Id.* at 384. In order to find a state court's application of Supreme Court precedent unreasonable under § 2554, the state court's decision must have been objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Williams*, 529 U.S. at 409 (explaining, "[s]tated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable"). An unreasonable application of federal law is distinct and different from an incorrect application of federal law. *Id.* at 410; *see also Macias v. Makowski*, 291 F.3d 447, 545 (6th Cir. 2002) (holding "the relevant question is not whether the state court's decision was wrong, but whether it was an unreasonable application of clearly established federal law").

Therefore, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. The Supreme Court has further explained that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)). Stated differently, petitioners for habeas relief "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

7

The AEDPA standard additionally provides that "a determination of a factual issue made by a State court shall be presumed to be correct." § 2254(e)(1). Factual determinations by State courts will not be overturned unless objectively unreasonable. § 2254(d)(2). The applicant, or petitioner, bears the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*; *see also Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003) (holding "[u]nder AEDPA, primary or historical facts found by state courts are presumed correct and are rebuttable only by clear and convincing evidence" (internal quotation marks omitted)). The findings of state appellate courts are also accorded the presumption of correctness. *Sumner v. Mata*, 449 U.S. 539, 546 (1981) (holding "[s]ection 2254(d) ... makes no distinction between the factual determinations of a state trial court and those of a state appellate court").

"But there are exceptions to the requirement of AEDPA deference." *Montes v. Trombley*, 599 F.3d 490, 494 (6th Cir. 2010). Specifically, the "substantially higher threshold" set by the AEDPA only applies to "claim[s] that w[ere] adjudicated on the merits in State court proceedings." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); § 2254(d)(1). When a petitioner for habeas relief seeks review of claims that were *not* adjudicated on the merits in state court, "then the pre-AEDPA standards of review apply." *Montes*, 599 F.3d at 494 (citing *Cone*, 556 U.S. at 472). Under the pre-AEDPA standard, "questions of law, including mixed questions of law and fact, are reviewed de novo, and questions of fact are reviewed under the clear-error standard." *Id.* (citing *Brown v. Smith,* 551 F.3d 424, 430 (6th Cir. 2008)). *See also Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011) ("Claims that were not 'adjudicated on the merits in State court proceedings' receive the pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact.")

"Under *Harrington v. Richter*, '[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on its merits in the absence of any indication or state-law procedural principles to the contrary.'" *Barton v. Warden, S. Ohio Corr. Facility*, 786 F.3d 450, 460 (6th Cir. 2015), *cert. denied sub nom* (quoting *Harrington*, 562 U.S. at 99). However, if a state court indicates that it did not reach the merits of a claim due to some procedural principal, or "when there is reason to think some other explanation for the state court's decision is more likely" than an adjudication on the merits, the presumption will be overcome. *Harrington*, 562 U.S. at 99–100. For instance, when a state court makes clear that, "instead of issuing a merits decision," the court "appl[ied] a procedural bar and thus [did] not consider[] the merits," such rulings "are not subject to on-the-merits AEDPA deference." *Barton*, 786 F.3d at 460–61 (citing *Johnson v. Williams*, 133 S. Ct. 1088, 1097 (2013)). In situations  "when a state court makes clear that it is deciding a claim both on the merits and on procedural grounds, [the Sixth Circuit has] held that a federal habeas court may nonetheless review that court's merits analysis and, if appropriate, apply AEDPA deference to that adjudication." *Id.* at 461 (citing *Brooke v. Bagley*, 513 F.3d 618, 624 (6th Cir. 2008)).

DISCUSSION

The Court will address each of the four grounds on which Parker seeks relief, the Magistrate Judge's findings with regard to each ground, and Parker's objections to the Magistrate Judge's findings, in turn.

## I.   <u>Ground One: Instructional Error</u>

In addressing the Parker's first ground for relief, that is, that two of the jury instructions given in Parker's 1997 trial were erroneous, the Magistrate Judge found that these claims were procedurally defaulted and further found that Parker failed to demonstrate the necessary cause

and prejudice or manifest injustice required to excuse the procedural default. [DN 20 at 35; 74–75.] The Court agrees.

## A.  Procedural Default

"A petitioner procedurally defaults claims for habeas relief if the petitioner has not presented those claims to the state courts in accordance with the state's procedural rules." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977); *Coe,* 161 F.3d at 329; *Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir. 1991)). As the Magistrate Judge explained, "[a] prisoner first may procedurally default a given claim by failing to comply with an established state procedural rule when presenting his claim at trial or on appeal in the state courts." [DN 20 at 36 (citing *Sykes*, 433 U.S. at 87).] Additionally, procedural default can occur when a petitioner completely "fail[s] to raise a claim in state court, and pursue that claim through the state's ordinary appellate review procedures." *Carter v. Mitchell*, 693 F.3d 555, 563 (6th Cir. 2012) (quoting *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999)). The Magistrate Judge further explained that a "claim will be held to be procedurally defaulted if, at the time the prisoner's habeas petition is filed, state law does not permit the prisoner to further pursue the claim." [DN 20 at 39 (citing *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991); *Engle v. Issac*, 456 U.S. 107, 125 n. 28 (1982)).]  In situations

> [w]hen a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."

*Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004) (quoting *Coleman,* 501 U.S. at 750).

The first instructional error Parker asserts in his first ground for relief is that the jury instruction on intentional murder (the "murder instruction") was flawed because it allowed the jury to convict him "if they believed it was his intention to kill George Campbell 'or another person,'" which, according to Parker, broadened the charge contained in Parker's indictment, which was for the murder of George Campbell only. [DN 1 at 5; DN 1-3 at 16.] According to Parker, this was a "fatal variance" and that the variance, in effect, "constructively amended" the indictment. [DN 1-3 at 16.]   Parker further states that the murder "instruction failed to specifically name Angelo Fleming as the 'other person' despite probative evidence that *he* was the individual with whom the Petitioner argued over the telephone, and his testimonial evidence that he was in the area of the Petitioner's home." [*Id.* at 15.]

The second instructional error Parker asserts is with the instructions on self-protection and imperfect self-protection (the "self-protection instructions"), also known as self-defense and imperfect self-defense. Specifically, the self-protection instructions that were ultimately tendered to the jury did *not* contain the "or another" language. [DN 1 at 5.] Parker explains that, at trial, he "did not assert that he believed that he was defending himself against George Campbell. He believed that he was defending himself against Angelo Fleming." [DN 22 at 4.] Therefore, Parker contends the omission of language which would allow the jury to find Parker guilty of a lesser offense based on his unreasonable belief that he needed to protect himself against "another person" *other than* George Campbell effectively "foreclosed a finding of self-defense or imperfect self-defense, because neither the defense nor the Commonwealth presented any evidence that the Petitioner feared death or serious physical injury at the hands of George Campbell." [*Id.* at 5.] As the Magistrate Judge explained, because of Parker's defense that he

believed someone *other* than Campbell was at the door at the time of the shooting, the trial court indeed

> reject[ed] the objection of the Commonwealth and . . . sustain[ed] the self-protection instruction using the words "or another." For some unknown reason, however, the written instructions tendered to the jury, in particular 3 and 3A dealing with self-protection and imperfect self-protection, failed to include the phrase "or another," contrary to the ruling of the trial court, but were nonetheless used without objection by defense counsel.

[DN 20 at 32–33.] It appears this omission was inadvertent.

Applying the four-part test established by the Sixth Circuit in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), however, the Magistrate Judge determined that both of Parker's claims of instructional error were procedurally defaulted. The Magistrate Judge wrote:

> [t]he Sixth Circuit in *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001) explained the *Maupin* test as follows:
>
>> This court's *Maupin* decision sets out four inquiries that a district court should make when the state argues that a habeas claim has been defaulted by petitioner's failure to observe a state procedural rule. First, the court must determine whether there is such a procedural rule that is applicable to the claim at issue and whether the petitioner did, in fact, fail to follow it. *Maupin*, 785 F.2d at 138. Second, the court must decide whether the state courts actually enforced its procedural sanction. *Id*. Third, the court must decide whether the state's procedural forfeiture is an "adequate and independent" ground on which the state can rely to foreclose review of a federal constitutional claim. "This question will usually involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims." *Id*. And, fourth, the petitioner must demonstrate, consistent with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that there was "cause" for him to neglect the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.*; see also *Scott v. Mitchell*, 209 F.3d 854, 864 (6th Cir.), cert. denied, 531 U.S. 1021, 121 S.Ct. 588, 148 L.Ed.2d 503 (2000).

[DN 20 at 38 (quoting *Greer*, 264 F.3d at 672).]

In reliance on *Maupin*, the Magistrate Judge explained that "[t]he Supreme Court of Kentucky, the highest state court to review Parker's current jury arguments in its 199[9] opinion declined to address the merits of either [of Parker's jury instruction] argument[s]." [*Id.* at 51.] Specifically, the Magistrate Judge explained that, first, the Kentucky Supreme Court

> concluded that his challenge to the self-protection instructions . . . and their failure to include the phrase "or another" was not preserved for review, despite the ruling of the trial court that both instructions should include the omitted phrase, where defense counsel failed to object when the erroneous written instructions omitting the phrase were read to the jury at trial.
>
> The Kentucky Supreme Court concluded that defense counsel had a duty under RCr 9.54(2)[3] to object under the circumstances to bring the omission to the attention of the trial court. No objection was raised contrary to the requirements of the Rule.
> . . .
>
> Accordingly, the Supreme Court of Kentucky . . . followed a firmly established, regularly followed state procedural rule when it declined to consider the merits of his "or another" argument regarding the self-protection instructions . . . of the 1997 trial.

[*Id.* at 51–52.] In addition to finding Parker's claim unpreserved under RCr 9.54(2), the Supreme Court of Kentucky additionally held that the omission of the "or another" language was not palpable error because,

> with the exception of the qualification instruction, the self-defense instruction was identical to that given during the first trial. In his original appeal to this Court, Appellant did not raise as error the omission of the phrase "or another" . . . As such, he is bound by the law of the case. *Haight v. Commonwealth*, Ky., 938 S.W. 2d 243 (1996); *Williamson v. Commonwealth*, Ky., 767 S.W.2d 323 (1989).

[DN 1-2 at 5.]

---

[3] Kentucky RCr 9.54(2) provides: "No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection." Ky. RCr. 9.54(2).

With regard to the murder instruction, the Magistrate Judge applied *Maupin* again, explaining:

> The Supreme Court of Kentucky . . . likewise found that Parker had failed to preserve his jury instruction challenge to the murder instruction . . . Parker, as earlier mentioned, had maintained on appeal that the instruction was deficient because it did not specifically identify whom Parker intended to kill that afternoon on May 29, 1994, when he fired the shotgun blast immediately upon opening the front door to the house. Parker maintained that the instruction should not have included the phrase "or another," the very same phrase omitted from the self-protection instructions discussed immediately above.
>
> As the Supreme Court correctly noted, however, Parker's trial attorney during the 1997 trial objected only that the murder instruction contained language that varied from the indictment. No argument was made below that a specific individual should have been named in the instruction. Accordingly, the Supreme Court of Kentucky, without citing RCr 9.54(2), found the instruction to be appropriate given the proof at trial, and continued to note that because the instruction was identical to that given during the 1995 trial, similar to the self-protection instructions, and Parker did not challenge either of the instructions in his initial 1995 appeal . . . "he is bound by the law of the case." (DN 10, 1998 Ky.Sup.Ct. Opin. at pp. 10-11, Appx. 160-61).
>
> Once again, the state's highest court declined to reach the merits of Parker's jury instruction arguments [pertaining to the murder instruction] . . . based upon what was in effect a double procedural default. Parker's trial counsel in the 1997 trial did not challenge the murder instruction based on the failure to name a specific victim, as argued on appeal, but rather focused on the inclusion of the "or another" language. The result is that RCr 9.54(2) was once again violated as Parker's trial counsel failed to preserve the basis of the objection raised on appeal by a timely objection during the trial.

[DN 20 at 51–53.] In sum, the Magistrate Judge determined that both claims of instructional error were "double" defaulted, first for failure to preserve Parker's objections under RCr 9.54 and second under Kentucky's law of the case doctrine for failure to raise the errors in Parker's first direct appeal.

Parker objects to the Magistrate Judge's conclusion that the self-protection instruction claim was procedurally defaulted as a result of Parker's 1997 trial counsel's failure to object

when the instructions ultimately tendered to the jury did not contain the "or another" language.

[DN 22 at 6.] In detail, Parker argues

> that once [trial counsel] tendered her proposed instructions and after the trial court accepted them over the Commonwealth's objection and agreed to instruct the jury in accordance with the tendered instruction, that the preservation requirement of RCr 9.54 was met.

[*Id.*] As stated above in footnote 3, *supra*, RCr 9.54(2) provides:

> No party may assign as error the giving or the failure to give an instruction unless the party's position has been fairly and adequately presented to the trial judge by an offered instruction or by motion, or unless the party makes objection before the court instructs the jury, stating specifically the matter to which the party objects and the ground or grounds of the objection.

Ky. RCr. 9.54(2). In reliance on this language, Parker argues in his objections that,

> [a]s worded it seems that RCr 9.54 (2) allows for three modes of preservation of an error allowing concerning jury instructions: 1) presentation by offered instruction; *or,* 2) presentation by motion; *or,* 3) objection before the court instructs the jury. In the case sub judice, counsel made a good faith effort at preservation by choosing the first option: presentation by offered instruction, which the court accepted.

[DN 22 at 6.] The Court disagrees. As an initial matter, Parker conceded in his brief to the Kentucky Supreme Court on the second direct appeal, under a subheading titled "Preservation," that "[t]his issue was not raised in the trial court, however, it should be reviewed by this Court as palpable error under RCr 10.26." [DN 10-4 at 14.] It appears, therefore, that even Parker's appellate counsel acknowledged the failure to comply with RCr 9.54(2).

Moreover, under the procedural default doctrine, "we defer to the state's procedural ruling." *Peoples v. Lafler*, 734 F.3d 503, 510 (6th Cir. 2013) (citing *Sykes*, 433 U.S. at 86–87). As is required by the first prong of the *Maupin* test, RCr 9.54 is applicable to the case at bar because it renders waived any jury instruction challenge that is not objected to before the court instructs the jury. Ky. RCr. 9.54(2). Here, as Parker conceded in his second direct appeal, trial

counsel did not object to the erroneous self-protection jury instruction. Therefore, Parker "fail[ed] to follow" the procedural requirements under Kentucky law, *Maupin*, 785 F.2d at 138, and at the time of the second appeal, Kentucky law no longer allowed him to pursue those claims.

Consistent with the second prong of *Maupin*, the Supreme Court of Kentucky unambiguously "enforced its procedural sanction," *id.*, by expressly noting that "it was incumbent upon defense counsel to call the omission to the attention of the trial court at the time the instructions were read to the jury" and "[h]aving failed to advise the trial court that the instruction given was not that which was tendered, Appellant failed to preserve the alleged error for review." [DN 1-2 at 5.]

Moreover, under the third prong of *Maupin*, the Court agrees with the Magistrate Judge that RCr 9.54 is "an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim." *Maupin*, 785 F.2d at 138. The Supreme Court has explained that, "[t]o qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). As the Magistrate Judge noted, "[t]he Kentucky Supreme Court has 'consistently regarded failure to comply with the requirements of RCr 9.54(2) as precluding [appellate] review.'" *Gill v. Beckstrom*, No. CIV.A. 12-145-HRW, 2014 WL 335036, at *7 (E.D. Ky. Jan. 29, 2014) (quoting *Chestnut v. Com.*, 250 S.W.3d 288, 304 (Ky. 2008)). Accordingly, the Court will overrule Parker's objection claiming that RCr 9.54 was an inappropriate ground on which to find procedural default of his self-protection instruction claims.

Parker further objects to a finding of procedural default regarding the self-protection instructions based on the law of the case doctrine, arguing that his "right to present a defense includes the right to have the jury consider it. This federal constitutional right trumps the 'law of the case doctrine.'" [DN 22 at 4.] However, as the Court has already found that Parker's claims of instructional error were procedurally defaulted as a result of a failure to comply with RCr 9.54, the Court need not address procedural default on the basis of Kentucky's law of the case doctrine. Accordingly, Parker's objections on law of the case grounds are overruled as moot.

Parker goes on to reiterate his assertions that no "fair minded jurists could disagree agree that Petitioner was denied the right to present a defense to the charge of intentional murder; where the self-protection instructions as worded did not allow for a finding that the Petitioner believed that he was defending against someone other than George Campbell." [*Id.* at 4.] Unfortunately, however, this objection goes to the merits of Parker's claims and does not provide an adequate ground for this Court to set aside the finding of procedural default. Only a finding of cause and prejudice or manifest injustice is sufficient for that. *See Bonilla*, 370 F.3d at 497 (quoting *Coleman,* 501 U.S. at 750).  It is therefore to those matters that we now turn.

### B.  Cause and Prejudice or Manifest Injustice

Finding the first three *Maupin* requirements satisfied, the Magistrate Judge turned to the fourth *Maupin* prong, which requires Parker to demonstrate cause and prejudice or manifest injustice to overcome a finding of procedural default with regard to the instructional errors. [DN 20 at 53; 74–75.] The Magistrate Judge concluded that Parker had not demonstrated either and, for the following reasons, the Court agrees.

### i.      Manifest Injustice

The Magistrate Judge explained that "[t]o establish manifest injustice, the petitioner must submit a credible claim that he or she is actually innocent to avoid the procedural bar to the consideration of the merits of his or her constitutional claims," which, in other words, means "the federal courts may address the merits of an otherwise defaulted claim if the petitioner has shown 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" [DN 20 at 53 (citing *Schlup v. Delo*, 513 U.S. 298, 326–32 (1995); *Cleveland v Bradshaw,* 693 F.3d 626, 631–32 (6th Cir. 2012); *House v Bell,* 547 U.S. 518, 536–37 (2006)).] The Supreme Court has further stated that,

> [t]o be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

*Schlup*, 513 U.S. at 324. Moreover, "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The district court "must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328.

The Magistrate Judge concluded that Parker had not met this heavy burden, and the Court agrees. As an initial matter, Parker has not offered any "new evidence" that would support a finding of actual innocence. And in the Court of Appeals' summary of facts on the night of the shooting, the court explained "Parker started packing his bags to get out of Louisville because he

felt his life was in danger. Then someone knocked at the door. Parker went to the bedroom and grabbed his gun. He opened the door and shot without looking to see who was there." [DN 1-2 at 21.] Based on these facts, a reasonable juror, even if given the self-protection instruction including the "or another" language, could have remained unpersuaded of Parker's belief in the need to defend himself.  Therefore, the Court agrees with the Magistrate Judge that it is not more likely than not that no reasonable juror would have found Parker guilty of intentional murder. Accordingly, Parker's objection claiming his "factual innocence," [DN 22 at 11], is overruled.

### ii.    Cause and Prejudice

Having failed to demonstrate manifest injustice, Parker's only remaining option for excusing the procedural default of the claims of instructional errors is a showing of cause and prejudice. To demonstrate "cause" for the procedural default, a petitioner must demonstrate that "something *external* to the petitioner, something that cannot fairly be attributed to him," was the reason for a failure to comply with state procedural rules. *Coleman*, 501 U.S. at 753. Failure of an attorney to properly raise or preserve a legal claim, "when it rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment, may also satisfy the cause requirement." [DN 20 at 41 (citing *See Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).]

To establish prejudice, a habeas petitioner must demonstrate "actual prejudice resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168 (1982). A petitioner must show, not "that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170. As the Magistrate Judge explained, "actual prejudice in this context is such prejudice as to establish a reasonable probability that the outcome of the

judicial proceedings would have been different." [DN 20 at 42 (citing *Jamison v. Collins,* 291 F.3d 380, 388 (6th Cir. 2002)).]

In support of a finding of cause for the procedural default, Parker first states in his objections that "[t]he trial court deciding to omit the phrase 'or another' at the last minute was an event external to the defense." [DN 22 at 10.] The Sixth Circuit has explained that external events "may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 388 (6th Cir. 2004) (quoting *Murray v. Carrier*, 477 U.S. 478, 493–94 (1986)). While it may be here that the trial court's omission was an external event, Parker must also show that the external event "impeded counsel's efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. The Court is unpersuaded that such was the case here. As discussed above, Parker's appellate counsel conceded in Parker's brief on appeal to the Supreme Court of Kentucky that "[t]his issue was not raised in the trial court," [DN 10-4 at 14], which appears to acknowledge that Parker's trial counsel failed to object as was required by RCr 9.54. The Court is unpersuaded that the inadvertent omission by the trial court impeded counsel's efforts to comply with RCr 9.54 such that it excuses the procedural default of the claims of error regarding the self-protection instructions.

Second, Parker alleges, as cause to excuse the procedural default, ineffective assistance of counsel for failing to preserve his claims of instructional errors. [*See* DN 22 at 13.] To this point, the Magistrate Judge found that the only claim of ineffective assistance of counsel Parker raised in front of the Kentucky Court of Appeals was his trial counsel's failure to present PTSD as part of Parker's defense. [DN 20 at 74.] The Magistrate Judge concluded, therefore, that

> [a]ll of the other claims of ineffective assistance of counsel that relate to the jury instructions . . . and the failure of appellate counsel during the first appeal to challenge the language of the jury instructions on murder and self-protection based on the phrase "or another" were waived by Parker, who failed to present these Sixth Amendment claims to the state's highest court.
>
> Because he failed to do so, these additional Sixth Amendment claims cannot be the basis for a successful argument of cause and prejudice that would permit this Court to overlook the multiple procedural defaults that occurred with respect to the constitutional claims raised in ground[] 1 . . . of his petition.

[DN 20 at 74–75.] The Magistrate Judge further dismissed Parker's contention that any ineffective assistance of counsel that may have occurred in Parker's RCr 11.42 post-conviction proceedings, specifically, that any alleged failure of his appointed RCr 11.42 counsel to raise and preserve the ineffective assistance of trial counsel ("IATC") claims was sufficient cause to excuse the default. [DN 20 at 75–76.] The Court agrees with both findings.

Parker filed his RCr 11.42 motion to vacate *pro se* on May 31, 2000. [DN 1-2 at 20.] Parker was then appointed counsel, who filed a supplemental memorandum in support of the RCr 11.42 motion on June 1, 2001. [*Id.*] In the trial court's April 15, 2003 order denying Parker's RCr 11.42 motion, the court noted several errors that Parker contended were committed by his 1997 trial counsel. [*Id.* at 19.] These included trial counsel's failure to 1) file a Petition for a Writ of Prohibition to prevent Parker's retrial on the charge of murder in his 1997 trial, 2) argue the "another person" issues with the jury instructions and to raise the issues in a motion for new trial, 3) notify the trial court that the grand jury tape contained gap, 4) obtain the testimony of Angelo Fleming by avowal, and 5) to present Parker's PTSD symptoms as part of his defense. [*Id.*] Without analyzing these claims in detail, the state court concluded "that the alleged errors committed by trial counsel were no more than strategic decisions that should not be second-guessed with the benefit of hindsight." [*Id.*] The court further declined to consider any claim of ineffective assistance of counsel that may have occurred in Parker's 1999 appeal because "RCr

11.42 cannot be used as a vehicle for relief from ineffective assistance of appellate counsel."[4] [*Id.*]

Subsequently, however, upon reconsideration, the trial court agreed to conduct an evidentiary hearing on Parker's RCr 11.42 motion on just one of the five claims of IATC raised therein: "whether Mr. Parker's trial counsel in the 1997 trial was ineffective for failing to present expert testimony regarding Post Traumatic Stress Disorder." [DN 1-2 at 13.] After analyzing the evidence presented at the hearing and applying the *Strickland v. Washington* standard, the trial court concluded that "Attorney Burke was aware that presenting detailed evidence of defendant's mental health issues did not result in a successful outcome in the 1995 trial. She made a reasonable strategic decision to focus on the imperfect self-protection defense. There was a rational basis for counsel's strategic decision." [*Id.* at 16.] Because this claim of IATC was the sole claim appealed to the Kentucky Court of Appeals, [*Id.* at 24][5] the Magistrate Judge concluded that the other four claims of IATC raised in Parker's RCr 11.42 motion, including his claims of IAC for failure to preserve his claims of instructional error, were waived. [DN 20 at 76.]

Parker argues in his reply, however, that, any waiver of his other four claims of IATC was due to the ineffectiveness of his appointed RCr 11.42 counsel for failing to object when the trial judge granted an evidentiary hearing one IATC claim, but not the other four. [DN 12 at 9.] Parker claims that, when the trial court vacated its April 15, 2003 order and granted an evidentiary hearing on only one IATC claim, he "did not receive an evidentiary hearing on the other claims. By failing to object to this limitation, Attorney Burke acquiesced to further

---

[4] As discussed below, Kentucky law on claims of ineffective assistance counsel raised in RCr 11.42 proceedings would later change with the Supreme Court of Kentucky's decision in *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010), *as modified on denial of reh'g* (Apr. 21, 2011).
[5] The Court addresses the merits of Petitioner's claim of error regarding the Court of Appeals' findings below in Ground III of this opinion.

22

proceedings being limited . . . , which prevented the Petitioner from being able to question each attorney regarding other claims raised in the 11.42 motion." [DN 12 at 9.] Parker claims that this failure to object to a limited evidentiary hearing constituted ineffective assistance on behalf of his initial post-conviction counsel as recognized by *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 133 S. Ct. 1911 (2013), and therefore that this ineffectiveness constitutes sufficient cause to set aside any failure to preserve his other claims of IATC. [DN 12 at 7–10; DN 22 at 16.]

Under the Supreme Court's recent decisions in *Martinez* and *Trevino*, "Kentucky prisoners can, under certain circumstances, establish cause for a procedural default of their IATC claims by showing that they lacked effective assistance of counsel at their initial-review collateral proceedings," such as RCr 11.42 proceedings. *Woolbright v. Crews*, 791 F.3d 628, 636 (6th Cir. 2015). However, "the holdings in *Martinez* and *Trevino* '[do] not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings....'" *Woolbright*, 791 F.3d at 636 (quoting *Martinez*, 132 S.Ct. at 1320). The Magistrate Judge concluded that the failure to preserve Parker's IATC claims was due to a failure of his post-conviction *appellate* counsel to raise those issues at the Kentucky Court of appeals, rather than a failure of his *initial* post-conviction counsel to raise those issues at the trial court, and therefore that the equitable right identified in *Martinez* and *Trevino* is inapplicable. [DN 20 at 75–76.]

Parker objects to this finding, however, and asserts that it *was* his initial RCr 11.42 appointed counsel who was ineffective because that counsel failed to protest the trial court's decision to "vacate" its April 15, 2003 order denying all five claims of IATC and hold an

evidentiary hearing on only one IATC claim, but not on the other four. [DN 22 at 15–16.] Parker

contends that his counsel's failure to object to this decision

> kill[ed] the Petitioner's ineffective assistance of counsel claim regarding failure to
> object to the jury instructions. The Petitioner could not rightly appeal from a
> "vacated" order; ergo this was not an issue was could be blamed on appellate
> counsel for failing to raise the issue in the post-conviction appeal. The ineffective
> assistance of counsel took place in the trial court during the initial review
> collateral proceedings.

[DN 22 at 16.] The Court disagrees.

On May 2, 2005, the trial court orally granted a motion made by Parker to "vacate" the

April 15, 2003 order and granted an evidentiary hearing on the claim of IATC relating to putting

on a defense relating to PTSD.  Miscellaneous Hearing Tape 36-A1, at 15:15:24, *Parker v. Com.*,

No. 94-CR-1300 (May 2, 2005). Although the trial judge stated that he was granting Parker's

motion to "vacate," in the trial court's written opinion ultimately denying Parker's RCr 11.42

motion on October 19, 2011, the court stated:

> this court denied Mr. Parker's initial RCr 11.42 motion to vacate judgment and
> conviction in a memorandum opinion entered on April 15, 2003. *Upon
> reconsideration*, this Court agreed to conduct an evidentiary hearing on Mr.
> Parker's motion. The sole issue is whether Mr. Parker's trial counsel in the 1997
> trial was ineffective for failing to present expert testimony regarding Post
> Traumatic Stress Disorder ("PTSD").

[DN 1-2 at 13 (emphasis added).]

"[T]he law in Kentucky is clear" that, "[w]hen there is a conflict between a court's oral

statements and the written judgment, the written judgment controls." *Machniak v. Com.*, 351

S.W.3d 648, 652 (Ky. 2011) (citing *Com. v. Taber*, 941 S.W.2d 463 (Ky. 1997) *overruled on

other grounds by Keeling v. Com.*, 381 S.W.3d 248 (Ky. 2012); *Com. v. Hicks*, 869 S.W.2d 35

(Ky. 1994) *overruled on other grounds by Keeling v. Com.*, 381 S.W.3d 248 (Ky. 2012)).

Moreover, "[a]s a general rule, an oral pronouncement is not a judgment until it is reduced to

writing." *Brock v. Com.*, 407 S.W.3d 536, 538 (Ky. 2013) (citing *Hicks*, 869 S.W.2d at 37). Here, as far as the Court can discern from the state court record, the first time the trial court judge reduced his ruling granting an evidentiary hearing on Parker's RCr 11.42 motion to writing was in the opinion ruling on that motion in 2011. Because, in that opinion, the trial judge stated that he granted an evidentiary hearing "upon reconsideration" of his April 13, 2003 order denying all five IATC claims, the Court is persuaded that the trial court merely "reconsidered" one aspect of its April 15, 2003 order, while leaving its ruling regarding the remaining four claims of IATC intact. This written order controls over the trial judge's previous oral statement. *See Machniak*, 351 S.W.3d at 652.

Indeed, both Parker's appellate counsel and the Kentucky Court of Appeals characterized the trial court's action as a reconsideration of his April 13, 2003 order as well. In the Kentucky Court of Appeals' 2013 decision affirming the trial court, the court stated that the trial court first denied the RCr 11.42 motion on April 15, 2003 but then "*reconsidered* and held an evidentiary hearing." [DN 1-2 at 20 (emphasis added).] And in Parker's brief to the Kentucky Court of Appeals, Parker stated that "[t]he court reopened the matter . . . when it agreed to *reconsider* its ruling on the specific question of ineffective assistance of counsel" related to the PTSD defense. [DN 10-6 at 15 (emphasis added).]

Accordingly, Parker's objections claiming that "the trial court essentially invalidated th[e] [April 15, 2003] order and made it and all of the issues therein null and void" and therefore that his counsel on appeal from his initial post-conviction proceedings "could not rightly appeal from a 'vacated' order," [DN 22 at 15–16], are overruled. It was the responsibility of Parker's post-conviction appellate counsel before the Kentucky Court of Appeals to raise and preserve his remaining IATC claims. Although Parker's counsel failed to do so, as the Court stated above,

"the *Martinez–Trevino* exception does not extend to attorney error at post-conviction *appellate* proceedings." *West v. Carpenter*, 790 F.3d 693, 698 (6th Cir. 2015), *cert. denied sub nom. West v. Westbrooks*, 136 S. Ct. 1456 (2016). Accordingly, any ineffective assistance that occurred in Parker's appeal from the trial court's denial of his RCr 11.42 motion cannot set aside the procedural default of Parker's IATC claims under *Martinez* and *Trevino*.

Parker additionally argues in his objections that his initial post-conviction RCr 11.42 counsel was ineffective for failing to adequately develop Parker's claim of ineffective assistance of *appellate* counsel on Parker's first direct appeal to the Kentucky Supreme Court, which ultimately resulted in the reversal of his 1995 conviction. Parker contends that his 1995 appellate counsel was ineffective for failing to raise error with the self-protection instructions in the first direct appeal. [DN 22 at 18–19.] As discussed above, failure to do so resulted in, accordingly to the Kentucky Supreme Court, this claim being procedurally defaulted under Kentucky's law of the case doctrine. [DN 1-2 at 5.] Claims of ineffective assistance of appellate counsel were not cognizable in Kentucky after appeals were heard on their merits until the Supreme Court of Kentucky's ruling in *Hollon v. Commonwealth*, 334 S.W.3d 431 (Ky. 2010), *as modified on denial of reh'g* (Apr. 21, 2011). In *Hollon*, the Supreme Court of Kentucky held that it would now "recognize IAAC claims premised upon appellate counsel's alleged failure to raise a particular issue on direct appeal," and held those claims could be raised in RCr 11.42 proceedings. *Id.* at 436.

In reliance on *Hollon*, *Martinez*, and *Trevino*, Parker contends that his initial RCr 11.42 counsel's failure to raise the issue of ineffective assistance of Parker's 1995 appellate counsel was sufficient cause to excuse the procedural default of his claim of error with regard to the self-protection instructions. [DN 22 at 19.] Therefore, he again objects to the Magistrate Judge's

finding that *Martinez* and *Trevino* are inapplicable. [*Id.*] However, *Martinez* and *Trevino* only apply narrowly to post-conviction proceeding counsel's failure to raise arguments of ineffective assistance of *trial* counsel, not their failure to raise claims of ineffective assistance of *appellate counsel*. *Martinez*, 132 S. Ct. at 1315 ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."); *Trevino*, 133 S. Ct. at 1921 (Extending *Martinez* to situations where a "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal."). Therefore, this alleged ineffectiveness also cannot constitute cause to set aside the procedural default, and Parker's objections on this ground are overruled.

Many of Parker's remaining objections address the merits of his claims of instructional error; that is, whether the instructions denied Parker the right to present his defense and were so flawed as to undermine confidence in the outcome of his trial. As the Court agrees that these claims are procedurally defaulted, however, it cannot reach these arguments absent a showing of cause and prejudice or manifest injustice. Because the Court agrees with the Magistrate Judge that Parker has demonstrated neither manifest injustice nor cause to set aside the defaults of his claims of instructional error, it is unnecessary for the Court to address whether Parker demonstrated prejudice. Accordingly, Parker's objections regarding his claims of instructional error are overruled.

## II.    Ground Two: Cross-Examination of Angelo Fleming

The Magistrate Judge also determined that Parker's claim in ground two of his habeas petition was procedurally defaulted, and therefore could not be considered on the merits unless

27

Parker demonstrated the requisite cause and prejudice or manifest injustice. [DN 20 at 58.]  In ground two of his petition, Parker claims he "was denied the right to cross examine a witness regarding whether he was promised any benefits from the Commonwealth in exchange for his testimony." [DN 1 at 7.] Parker states that, "[p]rior to both trials Mr. Fleming was under separate indictments for felonies involving firearms . . . [s]hortly after both trials, Mr. Fleming's charges were amended and probated." [*Id.*]

In its 1999 opinion, the Supreme Court of Kentucky gave what appears to be two grounds on which it rejected this argument. First, the court explained that

> during the bench conference following the Commonwealth's objection to the defense counsel's questioning [of Fleming], defense counsel conceded that Fleming's testimony was entirely consistent with the statement he provided to police prior to his own criminal offenses and subsequent indictments. As such, the trial court appropriately weighed the probative value of the proposed cross-examination against its prejudicial effect, and sustained the Commonwealth's objection.

[DN 1-1 at 4.] Second, the court went on to explain that Parker

> failed to move that the testimony be entered into the record by way of an avowal . . . "[W]ithout an avowal to show that a witness would have said, an appellate court has no basis for determining whether an error in excluding his proffered testimony was prejudicial." . . . It is not possible for this Court to determine whether Fleming would have, in fact, testimony to any motive or bias against [Petitioner]. As such, we must conclude that no error occurred.

[DN 1-2 at 4 (internal citations omitted).] In reliance on the later determination, the Magistrate Judge concluded that "[t]he Kentucky Supreme Court in this regard made a plain statement that its decision relied upon state procedural law so as to preclude review of the merits of this claim," and therefore found this claim, too, to be procedurally defaulted. In determining whether Parker showed the requisite manifest injustice or cause and prejudice, the Magistrate Judge again engaged in a complex analysis of whether ineffective assistance of Parker's trial and appellate counsel was sufficient cause and prejudice to excuse the procedural default.

However, it appears to this Court that

> [t]here are two reasonable interpretations to which this statement is susceptible. The Kentucky Supreme Court may have been relying on the procedural default. Its dismissal of [Petitioner's] claims on the merits would then be considered an alternative holding. In such a situation, we would consider the claims . . . procedurally defaulted . . . However, the Kentucky Supreme Court may have well been . . . ignor[ing] the issue of possible procedural default and consider[ing] the claims on the merits

when it concluded that the trial court appropriately limited the cross-examination. *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003); [DN 1-2 at 4]. In that case, Parker's "claims would not be defaulted because the state court would not have been relying on the procedural bar in its disposition of the case." *Id.* The Court finds "both interpretations eminently plausible," and "the fact that both interpretations are sensible settles this issue in [Parker]'s favor, for there must be unambiguous state-court reliance on a procedural default for it to block our review." *Id.* at 499 (citing *Gall v. Parker*, 231 F.3d 265, 321 (6th Cir. 2000), *cert denied*, 533 U.S. 941 (2001). Therefore, the Court will proceed to the merits of Parker's claim in ground two of his petition.

Because the Supreme Court of Kentucky addressed this claim, at least in part, on the merits, its reasoning is entitled to AEDPA deference, meaning the state court's decision will not be disturbed unless it 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d). Here, we cannot say that it did, and therefore habeas relief on this ground is not warranted.

To be sure, the Supreme Court "ha[s] recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right

of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974) (citing *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

> It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And . . . "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."

*Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam* ) (emphasis in original)). In *Van Arsdall*, the Supreme Court was convinced that a criminal defendant was not afforded the right of effective cross-examination when

> the trial court prohibited *all* inquiry into the possibility that [the witness] would be biased as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause
>
> . . .
>
> We think that a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby "to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness."

*Id.* at 679–80 (quoting *Davis*, 415 U.S. at 318).

In addressing Parker's Confrontation Clause challenge below, the Supreme Court of Kentucky explained:

> Appellant notes that at the time of his testimony against Appellant in both trials, Fleming was under indictment. He contends that he should have been able to question Fleming to disclose any bias or motive Fleming had in testifying.

30

> However, during the bench conference following the Commonwealth's objection
> to the defense counsel's questioning, defense counsel conceded that Fleming's
> testimony was entirely consistent with the statement he provided to police prior to
> his own criminal offenses and subsequent indictments.

[DN 1-2 at 4.] The court was therefore convinced that "the trial court appropriately weighed the

probative value of the proposed cross-examination against its prejudicial effect, and sustained the

Commonwealth's objection." [*Id.*]

Here, because it was clear to the trial court and the Kentucky Supreme Court that

Fleming was testifying at Parker's 1997 trial "consistent with his prior trial testimony *and* with

the statement that he initially provided to the police *prior to his first indictment*," [DN 20 at 55

(emphasis added)], presumably before a motive to testify favorably for the Commonwealth

arose, the Court is not persuaded that the Kentucky Supreme Court's decision denying relief on

this ground was so unreasonable as to violate clearly established federal law. Parker was not

prohibited from cross-examining Fleming altogether, but was only prevented from asking

whether Fleming was promised anything by the Commonwealth in return for his testimony. [*Id.*]

Indeed, the *Van Arsdell* Court explained that a trial court can impose reasonable "limits

on defense counsel's inquiry into the potential bias of a prosecution witness" to prevent, "among

other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation

that is repetitive or only marginally relevant." *Van Arsdell*, 475 U.S. at 679. In this case, it is

conceivable that the trial court's decision to prohibit Parker's trial counsel from asking Fleming

whether he had been promised something in return for his testimony was intended to avoid

confusing the jury or raising irrelevant issues of bias when Fleming's testimony remained

consistent at trial with the statements he made before his own criminal activity took place.

Therefore, the Court cannot say that the Kentucky Supreme Court's decision finding no error on

this ground was an unreasonable application of Supreme Court precedent interpreting the Sixth Amendment right to confrontation.

Many of Parker's objections to the Magistrate Judge's findings with regard to ground two of his petition argue that he can demonstrate cause and prejudice sufficient to overcome a procedural default. [*See* DN 22 at 23–25.] However, as this Court determined that whether a procedural default occurred was unclear, and therefore went on to address the merits of Parker's claim, the Court need not address those objections. As to the merits of this claim, Parker only states in his objections that

> the Magistrate Judge filed [sic] to consider that 'effective cross examination' would have been not only to show potential bias or motive, but that Mr. Fleming's own criminal behavior tended to prove that he was capable of engaging in the behavior which caused the Petitioner fear for his life at the hands of Mr. Fleming on the evening of May 29, 1994.

[*Id.* at 22.] Insofar as Parker claims he would have shown that Fleming was, in fact, the person from whom Parker was fleeing on the night of the shooting, there is nothing in the record to suggest that Parker was prevented from questioning Fleming with regard to those matters. Rather, Parker was only prohibited from asking whether the Commonwealth promised Fleming anything in exchange for his testimony. [DN 1-2 at 4.] Therefore, Parker's objections to the Magistrate Judge's finding on this ground are overruled.

## III.   <u>Ground Three: Ineffective Assistance of Trial Counsel for Failing to Present PTSD as Part of Parker's Defense</u>

In his third ground for relief, Parker claims that his trial counsel failed to present a defense emphasizing his PTSD symptoms by failing to adequately investigate those symptoms or obtain an expert witness to testify to the existence of PTSD, thereby amounting to ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). [DN 1 at 8.] The Supreme Court has explained that, under *Strickland*,

[t]o establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." 466 U.S. at 688, 104 S.Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.,* at 689, 104 S.Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687, 104 S.Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

. . .

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.,* at 689, 104 S.Ct. 2052; *Lindh v. Murphy,* 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles,* 556 U.S., at 123, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at 123, 129 S.Ct. at 1420. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104–105 (2011) (citing *Strickland*, 466 U.S. at 687–90).

Parker raised the argument of his trial counsel's ineffectiveness due to a failure to put on a defense involving PTSD in his RCr 11.42 proceedings. [DN 1-2 at 19.] As stated above, upon reconsideration of its initial denial of Parker's RCr 11.42 motion in 2003, the trial court held an evidentiary hearing on whether Parker's trial counsel was ineffective for this sole reason. [*Id.* at 13.] The hearing was held in two parts, with the first on September 23, 2005 and the second on December 6, 2006. [*Id.*] At the hearings, several individuals testified, including 1) attorney Stephanie Burke, Parker's 1997 trial counsel, 2) Shonda Abram, Parker's former spouse, 3) Eric Mason, a friend of Parker's, 4) Maxine Cull, Parker's mother, 5) Dr. John P. Wilson, a PTSD

33

expert, 6) attorney Patrick Bouldin, Parker's 1995 trial counsel, and 7) attorney Donald Meier, Parker's other 1995 trial counsel. [*Id.* at 13–14.]

After reviewing the evidence presented at the hearings, the trial court concluded, in a 2011 opinion, that "Attorney Burke made a reasonable strategic decision to focus on the imperfect self-protection defense. There was a rational basis for counsel's strategic decision." [*Id.* at 16.] Parker appealed this ruling to the Kentucky Court of Appeals, which affirmed the trial court's decision on August 23, 2013. [*Id.* at 20.] The Court of Appeals, after also reviewing the evidence presented at the evidentiary hearing, explained

> Parker's claim of ineffective assistance of counsel is premised on three perceived failures of counsel involving PTSD. First, Parker claims that Burke did not adequately investigate PTSD; second, Burke failed to retain an expert to explain PTSD; and third, Burke failed to present PTSD as a part of his defense. After our review of the record and the applicable law, we agree with the trial court that Burke made a reasonable strategic decision not to focus on PTSD and instead chose to focus on imperfect self-defense as a trial strategy.

> First, Parker's claim that Burke did not adequately investigate PTSD is refuted by the record. At the hearing Burke testified that she did general research regarding PTSD and spoke with Dr. Walker regarding Parker's mental health issues. This was certainly an adequate investigation and Parker's real contention is the perceived failure of counsel that Burke failed to retain an expert to explain PTSD. There is no serious contention that Dr. Walker, a psychiatrist, was not qualified to explain PTSD.

> . . .

> As the court explained in *Harper,* competent representation does not always require a second expert. *See Harper* at 315. We believe that *sub judice,* Burke was not ineffective for failing to call a second mental health expert when the trial strategy was to avoid confusing the jury on such matters. This brings us to Parker's third perceived error, namely, that Burke failed to present PTSD as a part of his defense.

> We are again in agreement with the trial court that Burke undertook a reasonable trial strategy by not pursuing PTSD in relation to the defense of imperfect self-defense. While another attorney may have certainly used PTSD to explain the need for imperfect self-defense, Burke explained repeatedly to the trial court that after what had transpired at the first trial and with what her investigation had

34

revealed, she elected to not bring forth Parker's mental health issues to the forefront and instead chose to go with imperfect self-defense. This resulted in Parker's receiving a lesser sentence upon retrial. Parker did not overcome the presumption that counsel provided a reasonable trial strategy. *See Strickland, supra.* We cannot say that such a calculated decision was unreasonable trial strategy in light of the facts *sub judice.* Accordingly, the court did not err in denying Parker's RCr 11.42 motion.

[*Id.* at 24 (citing *Harper v. Com.,* 978 S.W.2d 311, 314–315 (Ky. 1998)).]

As this claim of ineffective assistance of counsel was fully presented to the Kentucky Court of Appeals, the highest state court to address the issue, the Magistrate Judge proceeded to the merits of this claim. In doing so, the Magistrate Judge considered, pursuant to § 2254(d), whether the Court of Appeals' decision was "a decision so contrary to or an unreasonable application of clearly established precedent of the U.S. Supreme Court that reasonable jurists could not disagree that the decision was unsupportable." [DN 20 at 72.] The Magistrate Judge concluded that Parker had not met that burden. [*Id.*] In so concluding, the Magistrate Judge conducted a thorough review of the evidence and of the Court of Appeals' decision. First, the Magistrate Judge noted the Court of Appeals' finding that, contrary to Parker's contention, attorney Burke investigated Parker's PTSD symptoms by conducting "general research regarding PTSD . . . prior to trial and [a] pretrial meeting with Dr. Walker regarding Parker's mental health issues." [*Id.* at 71.]

The Magistrate Judge next addressed the Court of Appeals' finding that attorney Burke's decision to use Dr. Walker's expert testimony to address any mental health issues, as opposed to obtaining an additional expert, was a reasonable one. [*Id.*] To this point, Parker contends that attorney Burke should have obtained an expert such as Dr. John. P. Wilson, a PTSD expert who testified at the evidentiary hearing and who opined, despite never having examined Parker, "that Parker suffered from PTSD as a consequence of his involvement in the Person Gulf War." [DN 1-2 at 23.] Dr. Wilson formed this opinion based upon a review of Dr. Walker's report. [*Id.*]

The Magistrate Judge explained the Court of Appeals' holding that attorney Burke's decision not to call an additional expert, such as Dr. Wilson, was not contrary to clearly established Supreme Court precedent because

> [a] number of different federal court decisions support the view that an attorney's decision not to retain a second or additional expert, when one qualified expert has already been presented at trial, is not ineffective assistance of counsel. *See, Sidebottom v. Belo*, 46 F.3d 744, 753 (8th Cir. 1995) (defense counsel did not render ineffective assistance by not seeking a second opinion where counsel reasonably relied on the results of a psychological examination); *Poyner v. Murray*, 964 F.2d 1404, 1419 (4th Cir. 1992) ("The mere fact that ... counsel did not shop around for a psychiatrist willing to testify to the presence of more elaborate or grave psychological disorders simply does not constitute ineffective assistance.").

> Here, Dr. Walker had performed a complete psychological evaluation of Parker during his confinement at KCPC. Dr. Walker was fully qualified as a forensic psychiatrist and medical doctor to conduct such evaluation. While she did not formally diagnosis Parker with PTSD, she did testify that Parker began to have emotional problems after his Desert Storm military service in 1992, and that while hospitalized and treated at Camp Lejeune following his overseas service he was diagnosed with a personality disorder which was diagnosed by the VA as a schizophreniform disorder.

> She additionally was noted by the Court of Appeals to have testified that Parker had classic symptoms of PTSD although it was not listed as a diagnosis as he experienced nightmares, hypervigilance, flashbacks and startled response. Dr. Walker further testified that because Parker had been treated with Haldol prior to the time that he came to KCPC, and because he said that the medication helped, Dr. Walker continued him on the medication. Parker revealed no observable symptoms of PTSD while under Dr. Walker's observation at KCPC and it was her opinion that there was no indication that PTSD caused Parker to shoot Campbell.

> Her opinion instead was that while Parker was not acting out of psychosis, he was probably more paranoid than the average person. Accordingly, Dr. Walker, a licensed psychiatrist, presented testimony that, while not directed specifically to PTSD symptoms and their interplay with the defense of imperfect, self-protection, nevertheless was beneficial to Parker's defense. Under these circumstances, the Kentucky Court of Appeals decision can hardly be characterized as being contrary to or an unreasonable application of any well-established precedent of the U.S. Supreme Court.

[DN 20 at 72–74.]

36

Parker objects to the Magistrate Judge's conclusions by reiterating his original argument that, under *Porter v. McCollum*, 558 U.S. 30 (2009),

> *any* combat veteran charged with a crime should be afforded due consideration of the *effects* of any military related psychological problems at trial or sentencing, via ***thorough*** explanation of how those problems factored into the crimes for which the veteran is charged. Any strategy by counsel which fails to present in thorough detail the *honorable* service and related difficulties of a combat veteran at a murder trial, or at least at sentencing is objectively unreasonable, where "mens rea" is at issue, and there was a documented nexus between a defendant's honorable service, and the mental and emotional issues.

[DN 22 at 26–27.] Parker claims that his trial counsel's decision not to present his PTSD symptoms as part of his defense was contrary to *Porter*, a decision of the U.S. Supreme Court, in violation of § 2254(d). In *Porter*, the Supreme Court held that a habeas petitioner's defense counsel provided ineffective assistance where counsel "failed to uncover and present any evidence of [petitioner's] mental health or mental impairment, his family background, or his military service," and that failure prejudiced the petitioner under the *Strickland* standard. *Porter*, 558 U.S. at 40–44.

Parker claims that "[t]here is a reasonable probability that the reason the jury rejected the insanity defense at the first trial and imposed a life sentence, is because the Petitioner was portrayed as nothing more than a crazed military veteran paranoid schizophrenic with no prospect for rehabilitation." [DN 22 at 27.] Parker further argues that "[t]he Magistrate Judged ignored the heart of the *Porter* decision which was the Court's recognition of Porter's honorable service on the front lines, and the mitigating effect of the toll that combat had taken on Porter, similar to what had taken place with the Petitioner." [*Id.*] Parker contends that, here, the jury was left without a sufficient description of Parker's military and medical history in violation of *Porter*. [*Id.* at 28–9.] Finding *Porter* highly distinguishable from the present case, the Court disagrees.

In *Porter*, the petitioner's attorney "did not even take the first step of interviewing witnesses or requesting records." *Porter*, 558 U.S. at 39. Further, his counsel did "not obtain any of [his] school, medical, or military service records or interview any members of Porter's family." *Id.* As a result, petitioner's counsel did not *discover or present any evidence* of the petitioner's "mental health or mental impairment, his family background, or his military service." *Id.* at 40. Here, in contrast, as the Court of Appeals explained, attorney Burke *did* conduct research regarding PTSD, in addition to speaking with Dr. Walker, who had examined Parker, about Parker's mental health condition. [DN 1-2 at 25.] Moreover, attorney Burke called Dr. Walker to testify, and Dr. Walker testified that she evaluated Parker following his indictment, that he "had a history of emotional problems at the end of and following his military service," that he had been hospitalized and diagnosed with schizofreniform disorder, and that he "had a history of PTSD symptoms but had not been diagnosed as having PTSD. His symptoms included nightmares, flashbacks, hypersensitivity, and startle response." [*Id.* at 14.] Far from the situation in *Porter*, therefore, the jury did learn of Parker's military activity and that he exhibited symptoms of PTSD.

However, attorney Burke's ultimate decision not to make PTSD part of Parker's core self-protection defense in the second trial was due to the fact that, "after what had transpired at the first trial," which resulted in a verdict of guilty but mentally ill and a sentence of life imprisonment, "she elected not to bring . . . Parker's mental health issues to the forefront." [*Id.* at 27.] And indeed, the outcome in the 1997 trial was more favorable than that of the 1995 trial, resulting in a term of imprisonment of sixty-five years rather than life imprisonment. The Court of Appeals, applying *Strickland*, concluded that "Burke undertook a reasonable trial strategy" in deciding not to put greater emphasis on PTSD in the 1997 trial. [*Id.*] The Court cannot say that

this decision was so contrary to *Porter* or *Strickland* as to warrant habeas relief under § 2254(d)(1). Parker's objections on this ground are therefore overruled.

Parker further states in his objections that Dr. Walker's testimony was misleading with regard to medication Parker was taking, called Haldol, which Dr. Walker testified should have suppressed any PTSD symptoms Parker may have suffered, even though he missed a dose on the day of the shooting. [*Id.* at 22; DN 22 at 30.] Because the Court cannot discern any basis on which this argument would render the Court of Appeals' decision contrary to established Supreme Court precedent, however, it does not demonstrate that Parker is entitled to relief.

## IV.  Ground Four: Expert Testimony Regarding "Extreme Emotional Disturbance"

Fourth, Parker asserts error because Dr. Walker, the "state forensic psychiatrist who had evaluated the Petitioner at the request of the Commonwealth was prevented from testifying before the jury [in Petitioner's 1995 trial] that it was her expert opinion that he was suffering from an extreme emotional disturbance at the time of the fatal shooting." [DN 1 at 10.] As the Magistrate Judge noted, changes in Kentucky law following Parker's 1995 and 1997 trials, at first glance, appear to complicate this issue.

In its 1996 opinion reversing Parker's 1995 conviction, the Supreme Court of Kentucky explained, after citing Kentucky Rule of Evidence 702, that the

> [c]ourt has been exceedingly reluctant to allow expert testimony to encroach upon the role of the jury. In other words, an expert may not be allowed to testify as to his or her opinion on the ultimate issue in the case, as that decision must be left solely to the jury.

[DN 1-2 at 11–12.] The court went on to identify the "underlying issue" with regard to the admissibility of the testimony as the fact

> that the excluded expert testimony in this case deals directly with the ultimate issue in the case . . . appellant's state of mind at the time of the shooting . . . The expert for appellant wanted to testify that at the time of the shooting, her opinion

39

was that appellant was suffering from extreme emotional disturbance. This would obviously decide the issue for the jury and was therefore properly excluded.

[DN 1-2 at 12.] As the Magistrate Judge explained and Parker points out, "the law of Kentucky on 'ultimate issue' expert testimony changed approximately a month after his second trial concluded on Oct. 31, 1997." [DN 20 at 81.] In *Stringer v. Commonwealth*, the Supreme Court of Kentucky depart[ed] from the 'ultimate issue' rule and rejoin[ed] the majority view on this issue," holding that

> expert opinion evidence is admissible so long as (1) the witness is qualified to render an opinion on the subject matter, (2) the subject matter satisfies the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), (3) the subject matter satisfies the test of relevancy set forth in KRE 401, subject to the balancing of probativeness against prejudice required by KRE 403, and (4) the opinion will assist the trier of fact per KRE 702.

956 S.W.2d 883, 891 (Ky. 1997).

> Subsequently, on Aug. 26, 1999, two months after the Kentucky Supreme Court affirmed Parker's conviction in the 199[9] [decision], it held in *Commonwealth v. Alexander*, 5 S.W.3d 104, 105-106 (Ky. 1999) that *Stringer* resulted in a procedural change in the law rather than a substantive one so as to be retroactive in its application to those cases then pending on appeal.

> The problem for Parker, which he acknowledges, first, is that his case was no longer pending on direct appeal before the Supreme Court of Kentucky by the time that the *Alexander* decision made *Stringer* retroactive. Second, the admissibility or inadmissibility of Dr. Walker's testimony during the 1995 trial under KRS 702 was by then a long moot issue.

[DN 20 at 82.] The Magistrate Judge explained, in essence, that the changes in Kentucky law were irrelevant for Parker's purposes because

> the law of Kentucky remained unchanged until *after* his 1997 trial, which did not involve an identical issue of exclusion of Dr. Walker's testimony as to the ultimate issue [as did the 1995 trial]. Accordingly, Walker's final ground of his §2254 petition does involve a justiciable issue, but as noted is entirely moot. *Hayes v. Evans*, 70 F.3d 85, 86 (10th Cir. 1995) (habeas petitioner's §2254 petition was rendered moot where state appellate court reversed the petitioner's conviction and granted the petitioner a new trial); *Johnson v. Smith*, 764 F.2d 114,

40

116 (2nd Cir. 1985) (habeas petitioner's §2254 petition was rendered moot by the petitioner's retrial in state court, given that the original conviction was no longer the source of the petitioner's incarceration and the issues related to that earlier conviction had been rendered hypothetical by the retrial).

[DN 20 at 82.] The Court agrees that Parker's claim of error on this ground is moot, and adopts the Magistrate's findings as to this point. The Magistrate Judge went on to note, however, that even if Parker's claim was still justiciable, "in any event [it] involves only a question of state evidence law that was correctly decided at the time and therefore is not a cognizable issue of federal constitutional law." [DN 20 at 84.] The Court again agrees.

Parker's objection to the Magistrate Judge's findings regarding his fourth ground for relief merely states that

> [g]iven the nexus between this ground and Ground III, the Petitioner asks that Magistrate's recommendation related to this argument be considered in conjunction with Ground III as it relates to counsel's ineffectiveness for failing to secure an different expert witness knowing full well that the most mitigating aspect of Dr. Walker's report had been previously excluded based on a state evidentiary rule.

> Though not an issue for trial during the guilt phase, had the jury heard Dr. Walker's excluded opinion during the penalty phase, there is a reasonable probability that the Petitioner's sentence would have been significantly less than 65 years.

[DN 22 at 32.] It appears to the Court that Parker's objection is a reiteration of his ineffective of counsel claim, rather than an objection to the substance of the Magistrate Judge's findings that Parker's claim is moot and alternatively does not constitute error of a constitutional magnitude. Although it is unclear to the Court precisely how an ineffective assistance of counsel claim would apply in this context, it further appears that this is the first time Parker has raised ineffective assistance of counsel in support of his claim that it was error to prohibit Dr. Walker from testifying regarding extreme emotional disturbance. [*See* DN 1; DN 1-3.] The Sixth Circuit has explained that

41

> [c]ourts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir.1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F.Supp. 1299, 1302-03 (S.D.Ill. 1990). Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver.

*Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000). Accordingly, the Court finds this argument waived, and Parker's objection on this ground is therefore overruled.

## V.   **Evidentiary Hearing**

Several times in his objections, Parker states that "[a]t a minimum, this issue should be remanded for an evidentiary hearing, for the submission of interrogatories consistent with the arguments herein." [DN 22 at 17; 20; 25; 31 (citing *Brizendine v. Parker*, 644 F. App'x 588, 595 (6th Cir. 2016) ("[I]f we conclude that his post-conviction counsel was ineffective, he is entitled to an evidentiary hearing to prove the merits of his claim.")).] Because the Court has determined that Parker is not entitled to relief on any of the four grounds included in his petition, however, an evidentiary hearing is not warranted.

CONCLUSION

Having conducted a *de novo* review of the portions of the Magistrate Judge's report to which Parker objected, the Court adopts in part the findings of fact and conclusions of law of the Magistrate Judge, with only limited exceptions. First, the Court confined its analysis of the procedural default of Parker's claims of instructional error to a failure to preserve those claims under RCr 9.54. As a result, the Court did not address procedural default on the basis of Kentucky's law of the case doctrine, and does not adopt the Magistrate Judge's conclusions in

42

that regard. Second, the Court does not adopt the Magistrate Judge's conclusion that the claim made in ground two of Parker's habeas petition, that he was denied the right of effective cross-examination of Angelo Fleming, was procedurally defaulted. However, having reached the merits of that claim, the Court is persuaded that it does not entitle Parker to relief, and therefore adopts the Magistrate Judge's recommendation that Parker's § 2254 petition be denied. Additionally, the Court agrees with the Magistrate Judge and adopts his recommendation that, because reasonable jurists would not debate whether Parker has raised any valid grounds for habeas relief, a certificate of appealibility should be denied with respect to all four grounds raised in the petition.

Accordingly, for the reasons set forth above,

1. The Court **ADOPTS IN PART** the Magistrate Judge's Findings of Fact and Conclusions of Law consistent with the analysis set forth in this Memorandum Opinion, with the limited exceptions noted above.

2. The Court **ADOPTS** the Magistrate Judge's Recommendations that both Parker's § 2254 petition and a certificate of appealability be denied.

3. Parker's § 2254 petition for a writ of habeas corpus [DN 1] is **DENIED**.

4. A certificate of appealability is **DENIED** as to all four grounds of relief raised in the petition.

The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc:

Jyronna Parker, *pro se*
938 Southern Hills Drive, Apt. B
Richmond, KY 40475

Counsel